1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BAKER BOTTS L.L.P.**
Jonathan Patchen (Cal. Bar No. 237346)
jonathan.patchen@bakerbotts.com
Ariel D. House (Cal. Bar No. 280477)
ariel.house@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone:   (415) 291-6209
Facsimile:    (415) 291-6309

Monica H. Smith (*pro hac vice*)
monica.smith@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone:   (214) 953-6929
Facsimile:    (214) 661-4929

*Attorneys for Bai Brands, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SCHWARTZ,<br><br>Plaintiff,<br><br>v.<br><br>BAI BRANDS, LLC, a New Jersey Limited Liability Company.<br><br>Defendant. | Case No. 2:19-cv-06249-FMO-RAO<br><br>**BAI BRANDS, LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS TO THE PREVAILING PARTY PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 1021.5**<br><br><u>Judge</u>: The Hon. Fernando M. Olguin<br><u>Hearing Date</u>: October 8, 2020<br><u>Time</u>: 10:00 a.m.<br><u>Location</u>: U.S. Courthouse, 350 West 1st Street, 6th Floor, Courtroom 6D, Los Angeles, CA 90012<br><br><u>Action Filed</u>: July 19, 2019 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .......................................................................1

II.   BACKGROUND .......................................................................2

    A.   Bai's decision, implementation, and production of updated labels. .....2

    B.   Plaintiff's lawsuit was irrelevant to Bai's label decision.....................3

    C.   Discovery history and Plaintiff's lack of diligence...........................4

III.   LEGAL STANDARD ...............................................................6

IV.   ARGUMENT............................................................................7

    A.   Plaintiff is not a successful party...........................................7

        1.   Plaintiff has not established that the lawsuit was a catalyst motivating Bai to provide the primary relief sought. ................7

        2.   Plaintiff has not established that the lawsuit has merit............11

            (i)   Plaintiff has not put forth any evidence that consumers "commonly expect" the beverages to contain lime, pineapple, mango, or raspberry. ...............11

            (ii)   Plaintiff has not put forth any evidence that his claims otherwise have merit.....................................13

            (iii)   Plaintiff does not have standing to pursue his claims. ...15

    B.   Plaintiff has not satisfied the remaining requirements for an award of attorney's fees under Section 1021.5.............................................16

        1.   There is no evidence this lawsuit resulted in the enforcement of an important right affecting the public interest. ...................16

        2.   Plaintiff has not established that this litigation conferred a significant benefit on the public.................................17

        3.   Plaintiff cannot establish that private enforcement was necessary or that the financial burden this case was justified. .20

        C.      Awarding attorney's fees would be unjust..........................................22

V.      CONCLUSION................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Astiana v. Kashi Co.*,
   291 F.R.D. 493 (S.D. Cal. 2013) ........................................................14

*Baxter v. Salutary Sportsclub, Inc.*,
   122 Cal. App. 4th 941 (2004) ......................................................17, 18

*Borad v. Grossmont Union High Sch. Dist.*,
   No. D056606, 2011 WL 982889 (Cal. Ct. App. Mar. 22, 2011).......................13

*Bui v. Nguyen*,
   230 Cal. App. 4th 1357 (2014) ...............................................6, 16, 21

*Cal-Pak Delivery, Inc. v. United Parcel Service, Inc.*,
   52 Cal. App. 4th 1 (1997) ......................................................22, 23

*California for Population Stabilization v. Hewlett–Packard Co.*,
   58 Cal. App. 4th 273 (1997) ..............................................................15

*Canyon Crest Conservancy v. Cty. of Los Angeles*,
   46 Cal. App. 5th 398 (2020) ..........................................................6, 17

*Carlsbad Police Officers Ass'n v. City of Carlsbad*,
   49 Cal. App. 5th 135 (2020) ............................................................22

*Comm. to Defend Reprod. Rights v. A Free Pregnancy Ctr.*,
   229 Cal. App. 3d 633 (1991) ............................................................18

*Cornelius v. L.R. Cty. Metropolitan Transportation Authority*,
   49 Cal. App. 4th 1761 (1996) ..........................................................15

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) ..........................................................15

*eBay Inc. v. MercExchange, L.L.C.*,
   547 U.S. 388 (2006)....................................................................14

*Edwards v. Ford Motor Co.*,
   No. 11-CV-1058-MMA-BLM, 2016 WL 1665793 (S.D. Cal. Jan. 22, 2016)...19

*Ellis v. J.P. Morgan Chase & Co.*,
    No. 12-CV-03897-YGR, 2016 WL 5815734 (N.D. Cal. Oct. 5, 2016), *aff'd sub nom.* 752 F. App'x 380 (9th Cir. 2018) .......................................................8, 18

*Evans v. DSW, Inc.*,
    No. 16-CV-03791-JGB-SPX, 2018 WL 6920674 (C.D. Cal. Aug. 17, 2018) .......
    ................................................................................................6, 7, 13, 21, 22

*Folsom v. Butte Cty. Assn. of Gov'ts*,
    32 Cal. 3d 668 (1982) ................................................................................7, 8, 9

*Graham v. DaimlerChrysler Corp.*,
    34 Cal. 4th 553 (2004) ................................... 6, 7, 8, 9, 10, 11, 14, 16

*Hackett v. Proctor & Gamble Co.*,
    No. 06-CV-2272-MMA-WMC, 2009 WL 10725755 (S.D. Cal. Jan. 5, 2009) .....
    ................................................................................................9, 11, 13

*Henderson v. J.M. Smucker Co.*,
    No. 10-CV-4524-GHK-VBKX, 2013 WL 3146774 (C.D. Cal. June 19, 2013)....
    ..................................................................................................................15

*Hogar v. Community Dev. Comm'n*,
    157 Cal. App. 4th 1358 (2008) ...........................................................8

*Image Technical Service, Inc. v. Eastman Kodak Co.*,
    136 F. 3d 1354 (9th Cir. 1998) .............................................................22

*In re ConAgra Foods, Inc.*,
    302 F.R.D. 537 (C.D. Cal. 2014) .........................................................14

*In re General Motors Corp. Pick-Up Truck Fuel Prod. Liab. Litig.*,
    55 F.3d 768 (3rd Cir. 1995) .................................................................23

*Koby v. ARS Nat'l Servs., Inc.*,
    846 F.3d 1071 (9th Cir. 2017) .............................................................23

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003) .............................................................13

*LegalForce RAPC Worldwide P.C. v. TTC Bus. Sols., LLC*,
    No. 17-CV-07318-MMC, 2019 WL 6877197 (N.D. Cal. Dec. 17, 2019) .........14

*Low v. Trump Univ., LLC*,
    No. 10-CV-00940-GPC-WVG, 2016 WL 6732110 (S.D. Cal. Nov. 15, 2016) ....
    ...................................................................................................................13

*McFadden v. Nat'l Title Co.*,
    No. 11-CV-04175S-JOP-LAX, 2011 WL 13220462 (C.D. Cal. Aug. 10, 2011)
    ...................................................................................................................25

*McGuigan v. City of San Diego*,
    183 Cal. App. 4th 610 (2010) ........................................................................6

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ..........................................................18

*Ries v. Arizona Beverages USA LLC*,
    No. 10-CV-01139-RS, 2013 WL 1287416 (N.D. Cal. Mar. 28, 2013)..............18

*Serrano v. Unruh (Serrano IV)*,
    32 Cal.3d 621 (1982) ...................................................................................22

*Tipton-Whittingham v. City of Los Angeles*,
    34 Cal. 4th 604 (2004) ...................................................................6, 9, 10, 11

*Vargas v. City of Salinas*,
    200 Cal. App. 4th 1331 (2011) ..........................................................7, 11, 23

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-2724-LHK, 2014 WL 2191901 (N.D. Cal. May 23, 2014).............14

*Woodland Hills Residents Assn., Inc. v. City Council*,
    23 Cal. 3d 917 (1979) ..................................................................................20

**STATUTES**

California Code of Civil Procedure § 1021.5 .................................................6, 10, 16

**OTHER AUTHORITIES**

21 C.F.R. § 101.22 ....................................................................................11, 21

Fed. R. Civ. P. 11 ..............................................................................................24

Fed. R. Civ. P. 23 ..............................................................................................23

Fed. R. Evid. 201 ..............................................................................................12

Fed. R. Evid. 401 ...................................................................................12

Fed. R. Evid. 602 ............................................................................12, 18

Fed. R. Evid. 701 ...................................................................................12

L.R. 83-3.1.2 .........................................................................................24

## I.    __INTRODUCTION__

Plaintiff's Motion represents consumer class action litigation at its worst. Plaintiff brought this putative class action to challenge the labels of Bai Antioxidant Cocofusion beverages (the "Bai Cocofusions") and obtain classwide damages.  But Plaintiff and his counsel have done almost nothing to prosecute this case; they failed to depose *a single witness* during fact discovery and failed to designate *a single expert* to provide testimony on any subject.  Instead, having belatedly found that Defendant Bai changed the product label, Plaintiff's counsel moves this Court for a payday *for themselves*—and at the expense of the putative class.  They admit that "if this instant Motion is granted, Plaintiff will not pursue any further monetary or punitive damages" and will dismiss the case.  Plaintiff's Motion for Attorney's Fees, Dkt. 80-1 ("Mot.") at 16.[1]  Even if Plaintiff had satisfied the statutory criteria for attorney's fees—he does not—this improper conduct would preclude an award.

Indeed, Plaintiff does not even come close, on the merits, to satisfying the criteria in California Code of Civil Procedure § 1021.5.  He submitted no evidence that his lawsuit caused Bai to change the label.  He provided no evidence that his lawsuit was meritorious: no showing of common expectation, of consumer confusion or harm, or of damages.  He has no evidence of any benefit provided to any consumer in California.  To award fees, the Court must find—on substantial evidence—that all of these, and other, statutory criteria are met.  Here, Plaintiff has no evidence; the Court is required to deny the Motion.

And Plaintiff's missing evidence is no oversight; the evidence is missing because it does not exist.  Had Plaintiff bothered to conduct discovery, he would have learned what Bai now demonstrates to this Court: that Bai decided to update its labels in 2017, which was *over a year before* Plaintiff served a demand letter or filed a complaint.  He would have seen that the process of implementing the label change

---

[1]    Docket citations are based on the ECF-assigned pagination.

was complete by the time Plaintiff filed his lawsuit on July 19, 2019.  He would have known that rollout of the labels began before he filed his complaint and was completed, in the ordinary course, by January 2020.  In short, he would have understood that this Motion was frivolous.  It should be denied.

## II.   BACKGROUND

### A.   Bai's decision, implementation, and production of updated labels.

Plaintiff's Motion contains no facts regarding Bai's decision to update the labels of the Bai Cocofusions.  The only facts on this topic are thus set forth in the concurrently-filed declarations of Bai's Director of Regulatory and Scientific Affairs, Diane Malunowicz, and Bai's Supply Chain Manager, Adam Fox.  *See* Declaration of Diane Malunowicz ("Malunowicz Decl.") ¶¶ 2-3; Declaration of Adam Fox ("Fox Decl.") ¶ 2.  Those declarations establish that the decision to update the labels was made *years* before this lawsuit was filed; the issuance of the new labels was complete by the time Plaintiff filed his complaint; and that production of the new labels had begun before Bai was even served with the lawsuit.

The decision to update the labels of the Bai Cocofusions to include the word "Flavored" was made in 2017.  Malunowicz Decl. ¶ 6.  In January 2017, Keurig Dr Pepper, Inc.'s ("KDP") predecessor, Dr Pepper Snapple Group, Inc. ("DPSG"), completed its acquisition of Bai.  *Id.* ¶ 5.  Following that acquisition, DPSG reviewed the labels of all of the products in the Bai portfolio, including the Bai Cocofusion products and the Bai Bubbles products.  *Id.*  In or about September of 2017, the company's Regulatory Group decided to add the word "Flavored" to the front labels of both sets of products, so that they would read, for example, "Coconut Pineapple Flavored" or "Pineapple Flavored."  *Id.* ¶ 6.

Implementation of that decision began immediately for certain Bai products (i.e., the Bai Bubbles product line).  *Id.* ¶ 7 & Exs. A & B.  Bai did not immediately implement the 2017 decision to add the word "Flavored" to the Bai Cocofusion beverages, because, unlike for the Bai Bubbles products, the formulas for the Bai

Cocofusions were being updated and the nutrition facts panels on the labels still had to be revised in order to comply with new FDA requirements. *Id.* ¶ 9.

Thus, implementation of the September 2017 decision began, as to the Bai Cocofusion labels, in early 2019, when the formula updates for the Bai Cocofusions were complete. *Id.* ¶ 10. Specifically, the Regulatory Group issued Label Information Notes ("LINs")[2] for the Pineapple flavor on February 28, 2019, and for the Lime and Mango flavors on April 10, 2019. *Id.* ¶ 11 & Exs. C, D, E.[3] After the LIN language was incorporated into the labels themselves, the Regulatory Group began approving the finished labels on May 10, 2019, and the finished labels for all three products were issued by July 16, 2019. *Id.* ¶¶ 12-15, Exs. F, G, H.

Once the updated labels were issued and approved, the Supply Chain Group placed its first order for the new labels with its production facilities and sent the updated labels to those production facilities. *See* Fox Decl. ¶¶ 6-7. Specifically, the updated labels were sent to the production facilities between July 15, 2019 and October 24, 2019, with production beginning between July 26, 2019 and October 29, 2019. *Id.* Therefore, both of Bai's production facilities had begun the transition to the updated labels for each product by the end of October 2019. *Id.* ¶ 8. It then takes up to approximately 90 days for the new labels to appear on retail shelves. *Id.* ¶ 9. As a result, products bearing the updated labels for each of the Bai Cocofusions were on retail shelves in California by the end of January 2020. *Id.*

### B. Plaintiff's lawsuit was irrelevant to Bai's label decision.

Plaintiff filed his lawsuit on July 19, 2019, and did not serve Bai or KDP until October 23, 2019. *See* Dkts. 1, 23, 24. Matched against the established timeline from the above-described Declarations, the lawsuit came *after* the decision to change

---

[2]    A LIN is the document that sets forth the regulatory language that will be used on the label, including the flavor labeling, and is not generated unless the Regulatory Group has already decided to change the label. *Id.* ¶ 4.

[3]    The Raspberry flavor had been discontinued in 2018. *Id.* ¶ 11.

1  the Bai Cocofusion labels had already been made (Sept. 2017); *after* the
2  implementing LINs were issued (Feb.-Apr. 2019); and *after* finished labels were
3  issued (by July 16, 2019).  As Ms. Malunowicz and Mr. Fox declared, Plaintiff's
4  lawsuit did not influence or accelerate the decision to update the labels or the rollout
5  of the new labels—or anything about the timing, manner, approach or process of
6  these steps.  Malunowicz Decl. ¶¶ 17-19; Fox Decl. ¶¶ 11-13.  Both witnesses
7  categorically declared, under penalty of perjury, that the lawsuit did not impact Bai's
8  update or rollout of the labels.  Malunowicz Decl. ¶¶ 18-19; Fox Decl. ¶¶ 12-13.

9  **C.    Discovery history and Plaintiff's lack of diligence.**

10  Fact discovery in this matter opened on January 17, 2020.  Dkt. 42, Dkt. 43 at
11  2.  Plaintiff did not serve any written discovery until May 7, 2020.  Dkt. 63 at 12.
12  Because Plaintiff sought information that was confidential, proprietary, or trade
13  secret information, Bai proposed a stipulated protective order based on Judge
14  Oliver's model order.  Declaration of Jonathan Patchen ("Patchen Decl.") ¶ 4 & Ex.
15  I.  Despite follow-up attempts from Bai, Plaintiff *never* responded to, much less
16  executed, the proposed stipulated protective order, so it was never entered.  *Id*. ¶ 4.

17  Plaintiff did not raise the topic of, much less notice, any depositions until
18  Saturday, July 11, 2020—nearly a year after the case was filed and just twelve days
19  before the fact discovery cut-off.  *Id.*  That Saturday, Plaintiff served an extensive
20  Rule 30(b)(6) notice accompanied with document requests.  Bai moved *ex parte* to
21  quash the untimely deposition notice, which application was granted.  Dkts. 63, 72.

22  Despite Plaintiff's lack of diligence, Bai fully disclosed facts relating to the
23  labeling of its products in discovery.  On April 16, 2020, in its Rule 26 Initial
24  Disclosures, Bai disclosed *six different witnesses*, including Ms. Malunowicz, on
25  various aspects of Bai's "labeling."  Patchen Decl. ¶ 5, Ex. K.  Additionally, when
26  Plaintiff requested that Bai produce the labels of its Cocofusion beverages, Bai
27  promptly produced them, in industry-standard ESI production format.  Patchen Decl.
28  ¶ 10.  Specifically, on June 18, 2020, Bai produced both the updated copy of the

Lime label (BAI00000332) and the previous version (BAI00000325). *Id.*[4] Plaintiff's counsel admits they were able to view files that appeared to be "mock-ups of the production labels." *See* Dkt. 80-2 at 22 ¶ 5(F). Additionally, on August 6, 2020, with its opening expert report on damages, Bai produced copies of the updated Pineapple and Mango labels (BAI00001971; BAI00001972). Patchen Decl. ¶ 11. Plaintiff's counsel admits that the PDF files in that production contain "images of Bai bottle labeling that appeared to be post - redesign." Dkt 80-2 at 24 ¶ 5(J).

Bai also disclosed the label change itself, and details concerning the decision to change the label, in its August 6, 2020 opening expert report on damages. In that report, Bai's damages expert Keith Ugone showed ***side-by-side images*** of the old and new Lime label, with the bates labels cited. *See* Patchen Decl. ¶ 14, Ex. P at 18. Dr. Ugone also called out the specific bates labels of the updated Pineapple and Mango labels and their dates—all before this lawsuit was filed. *Id.* at 6 n.20. He also recounted conversations he held with Ms. Malunowicz and Mr. Fox concerning Bai's decision to change the label in 2017 and the rollout of the label change in 2019. *Id.* at 6. Apparently, Plaintiff's counsel has not even read this report, because they claim (under oath) that they "still have not seen any documents that demonstrate the change in Defendant's Cocofusion beverage labels." *See* Dkt. 80-2 at 28 ¶ 5.

Bai fully disclosed the label change. And Plaintiff's counsel could have discovered the label change themselves, given that the new label has been on store shelves since January 2020. Fox Decl. ¶ 9. Plaintiff's counsel admits that they never *once* reviewed Bai labels in stores until July 2020—a year after the case was filed. Dkt. 80-2 at 7 ¶ 3 ("For the first time, since the commencement of this action, I physically picked up and had such beverage in my hand [on July 10, 2020].").

As to expert discovery, on August 6, 2020, the deadline for opening expert witness disclosures, Bai served the opening report of its damages expert, Dr. Ugone,

---

[4]    Given Plaintiff's admission that he had only ever bought the Lime flavor, Bai objected to producing the non-Lime labels. Plaintiff did not contest this objection.

1   and disclosed its second expert Adam Raycraft.  Patchen Decl. ¶ 14, Exs. P & Q.  By

2   contrast, Plaintiff did not disclose any experts on August 6, 2020, or any rebuttal

3   experts by the September 8, 2020 rebuttal expert deadline.  *Id. ¶¶* 14-15.

4   **III.   LEGAL STANDARD**

5        California Code of Civil Procedure section 1021.5 permits an award of

6   attorney's fees to a party who establishes: "(1) he or she is a 'successful party,' (2)

7   the action has resulted in the enforcement of an important right affecting the public

8   interest, (3) the action has conferred a significant benefit on the public or a large

9   class of persons, and (4) an attorney fees award is appropriate in light of the necessity

10  and financial burden of private enforcement."  *Canyon Crest Conservancy v. Cty. of*

11  *Los Angeles*, 46 Cal. App. 5th 398, 408 (2020).  A party may be "successful" without

12  obtaining a judgment under the "catalyst theory"—i.e., "when it achieves its

13  litigation objectives by means of defendant's 'voluntary' change in conduct in

14  response to the litigation."  *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 572

15  (2004), as modified (Jan. 12, 2005).  To establish success by catalyst theory, the

16  moving party "must establish that (1) the lawsuit was a catalyst motivating the

17  defendants to provide the primary relief sought; (2) that the lawsuit had merit and

18  achieved its catalytic effect by threat of victory, not by dint of nuisance and threat

19  of expense . . . and, (3) that the plaintiffs reasonably attempted to settle the litigation

20  prior to filing the lawsuit."  *Tipton-Whittingham v. City of Los Angeles*, 34 Cal. 4th

21  604, 608 (2004).

22       The Court does not have discretion to award fees unless the statutory criteria

23  are first established by Plaintiff.  *McGuigan v. City of San Diego*, 183 Cal. App. 4th

24  610, 623 (2010).  The moving party bears "[t]he burden [of] establish[ing] each

25  prerequisite to an award of attorney fees under section 1021.5."  *Bui v. Nguyen*, 230

26  Cal. App. 4th 1357, 1365 (2014).  And the moving party must establish each element

27  of Section 1021.5 with admissible evidence.  *E.g.*, *Graham*, 34 Cal. 4th at 576

28  ("development of the factual record is required in order to prevail on a catalyst

theory"); *Evans v. DSW, Inc.*, No. 16-CV-03791-JGB-SPX, 2018 WL 6920674, at *7 (C.D. Cal. Aug. 17, 2018) (noting the "substantial evidence" requirement).

## IV.   ARGUMENT

### A.   Plaintiff is not a successful party.

Plaintiff has not won the lawsuit.  Thus, Plaintiff's only basis for claiming "success" is the catalyst theory.  And he utterly fails to satisfy his burden of proving, by substantial evidence, that his lawsuit caused Bai to change its label and that his lawsuit has merit.  *See Evans*, 2018 WL 6920674, at *7, *9 (plaintiff seeking fees under catalyst theory must provide "substantial evidence [] that the plaintiff's lawsuit was a catalyst" and show its "claims were meritorious [and] that its factual allegations were grounded in evidence"); *Vargas v. City of Salinas*, 200 Cal. App. 4th 1331, 1340 (2011) ("contentions do not supplant evidence;" a plaintiff must have "a factually meritorious lawsuit"); *Graham*, 34 Cal. 4th at 576 (court must assess merits based on "the factual record" not merely "the pleadings").  And the admissible evidence on this Motion rebuts both.  In short, Plaintiff's lawsuit was no catalyst.

### 1.   Plaintiff has not established that the lawsuit was a catalyst motivating Bai to provide the primary relief sought.

The first element of the catalyst theory requires proof that the lawsuit motivated the defendant's change in behavior.  Plaintiff fails to provide *any evidence* as to this element, which is fatal to Plaintiff's Motion.

"At the very least," a plaintiff must establish "the precise factual/legal condition that [he] sought to change . . . immediately prior to the commencement of suit."  *Graham,* 34 Cal. 4th at 576; *Folsom v. Butte Cty. Assn. of Gov'ts*, 32 Cal. 3d 668, 685 n.31 (1982).  This requirement ensures that a plaintiff cannot claim his lawsuit is the catalyst of a change that was either in process or already completed before the lawsuit was filed.

Here, Plaintiff does not come close to establishing this minimum factual showing.  Plaintiff has no evidence about the precise *external* conditions—i.e., how

the challenged product labels appeared immediately before his lawsuit was filed on July 19, 2019, or when the labels were changed. Excluding Bai's candid description of the label change process in this Opposition, Plaintiff has *no evidence* that the new labels found by his counsel in July 2020 were not already on retail shelves before his lawsuit. Plaintiff's only evidence is the label on a single product (the Lime flavor) purchased in October 2018—*ten months prior to filing suit*—which was the only time he purchased any of the four challenged beverages. Patchen Decl. ¶ 9, Ex. M at 50:17-52:13. Indeed, Plaintiff's lawsuit named the Raspberry flavor *even though* that flavor was discontinued in *2018* and would not have been on shelves in July 2019; Malunowicz Decl. ¶ 11—a fact Plaintiff's counsel belatedly learned. Dkt. 80-2 at 8-9 ¶ 6. Similarly, Plaintiff has *no evidence* as to the *internal* conditions at Bai. In short, Plaintiff failed to proffer *any evidence* to meet his *minimum* evidentiary showing of the condition immediately prior to filing suit. Even apart from Bai's declarations filed herewith, Plaintiff's failure dooms his catalyst theory.[5]

Even more problematic, Plaintiff did not present evidence in his Motion of "the role, if any, played by the litigation in effecting any change." *Folsom*, 32 Cal. 3d at 685 n.31. This lack of evidence comes from Plaintiff's failure to take any discovery on this issue. All Plaintiff offers is that his counsel saw new Bai Cocofusion labels that included the word "Flavored" at a grocery store in July 2020.

---

[5]   Plaintiff appears to rely on the occasionally permissible "inference of causation" available to a plaintiff when "action is taken by the defendant after plaintiff's lawsuit is filed." *Ellis v. J.P. Morgan Chase & Co.*, No. 12-CV-03897-YGR, 2016 WL 5815734, at *5 (N.D. Cal. Oct. 5, 2016), *aff'd sub nom.* 752 F. App'x 380 (9th Cir. 2018). But "[t]o determine whether such an inference arises" the plaintiff has to establish the minimum showing from *Graham* and *Folsom*: the "situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." *Id.*; *see also Hogar v. Community Dev. Comm'n*, 157 Cal. App. 4th 1358, 1366 (2008) (noting the same two as the "appropriate benchmarks" for application of the chronology inference). Because Plaintiff here failed to establish either, no inference of causation based on the chronology of events is permissible.

*See* Dkt. 80-2 at 2-3 ¶ 6 & Exs. A, B, C.  But that belated discovery does not establish a causal connection between the lawsuit and any label change.  *See Hackett v. Proctor & Gamble Co.*, No. 06-CV-2272-MMA-WMC, 2009 WL 10725755, at *3 (S.D. Cal. Jan. 5, 2009) (holding that "Plaintiff's counsel's viewing of Defendant's website on a discrete date" did not establish any "causal connection" between the lawsuit and the defendant's labeling change, and was "simply insufficient to show that this lawsuit resulted in changes in Defendant's behavior").[6]

Plaintiff's complete lack of relevant evidence compels denial of the catalyst theory.  And Bai's evidentiary submissions confirm this is the correct outcome.  The "factual condition [] immediately prior to the commencement of the suit" is that Bai had already decided to change the Bai Cocofusion labels (Sept. 2017); had already issued implementing LINs (Feb.-Apr. 2019); had already issued finished labels (by July 16, 2019); and had already sent one of the finished labels to production (on July 15, 2019).  Malunowicz Decl. ¶¶ 6, 10-15 & Exs. C to H; Fox Decl. ¶ 6.  Similarly, the factual record confirms the litigation had no role in "effecting any change." *Folsom*, 32 Cal. 3d at 685 n.31.  Ms. Malunowicz and Mr. Fox have both declared that the lawsuit did not influence or accelerate Bai's decision to update the labels or Bai's rollout of the new labels.  Malunowicz Decl. ¶¶ 18, 19; Fox Decl. ¶¶ 12, 13.  With this undisputed factual record, Plaintiff cannot establish that the lawsuit was a catalyst for the label change.  *See Tipton-Whittingham*, 34 Cal. 4th at 608.

---

[6]   Plaintiff suggests a causal connection exists because he contends that Bai updated its labels "using the exact language Plaintiff proposed."  Mot. at 21.  But this is demonstrably false.  In his lawsuit, Plaintiff called for Bai's labels to read "Andes Coconut, and Lime Flavored."  Dkt. 37 ¶ 40.  But Bai did not break up its "Andes Coconut Lime" trademarked language; rather it added new language following "Andes Coconut Lime™" that reads "Coconut Lime Flavored Antioxidant Beverage."  Malunowicz Decl. Ex. G.  While Plaintiff concedes that this language satisfies FDA regulations, Mot. at 11-13, this was not "the exact language Plaintiff" proposed.  In other words, the change was not even "in the manner sought by [] the litigation" as required under the catalyst theory. *Graham*, 34 Cal. 4th at 560.

In an effort to avoid much of the evidence that undercuts his catalyst theory (e.g., LINs and finished labels), Plaintiff suggests that the Court should consider his demand letter, dated October 25, 2018, in deciding whether Plaintiff's lawsuit was a catalyst. *See* Mot. at 6 ("Plaintiff Schwartz had demanded Bai [change its labels] nine months before he filed this lawsuit."). That argument is both factually irrelevant and legally wrong. *First*, factually, the decision to change the label was made in 2017—more than a year before (and thus completely independent of) Plaintiff's demand letter. Malunowicz Decl. ¶¶ 6, 18-19. Neither the demand letter nor the lawsuit caused Bai to make a decision that it had already made long before.

*Second*, as a legal matter, it must be the lawsuit, not a pre-suit demand letter, that resulted in the defendant's change in conduct. "[I]n the context of section 1021.5, the term 'party' refers to a party *to litigation*, and therefore precludes an award of attorney fees when no lawsuit has been filed." *Graham*, 34 Cal. 4th at 570 (emphasis added). The catalyst theory applies only to "change in conduct *in response to the litigation.*" *Id*. at 572 (emphasis added). And, of course, Section 1021.5 expressly requires that the "*action . . .* resulted in the enforcement of an important right affecting the public interest." Cal. Code Civ. P. § 1021.5 (emphasis added); *id*. § 22 (defining "action"). A demand letter is not litigation; it is not an action. It is legally irrelevant to the determination of catalyst.

Indeed, this must be the case, because the catalyst theory itself requires that the plaintiff attempt to settle the litigation *prior to filing the lawsuit*—meaning that if a defendant does change his conduct because of those settlement efforts, he cannot be forced to pay plaintiff's fees. *See Tipton-Whittingham*, 34 Cal. 4th at 609 ("[W]e have adopted the requirement that a plaintiff attempt to settle its grievance short of litigation. [] [P]rompt correction [] once it is brought to their attention will avoid payment of attorney fees."). Accordingly, Plaintiff must prove that "*the lawsuit* was a catalyst motivating the defendants to provide the primary relief sought"—not

merely a pre-suit demand. *Id.* at 608 (emphasis added). Plaintiff has not done so here, and could not possibly do so, given the factual record before the Court.

### 2. Plaintiff has not established that the lawsuit has merit.

The second catalyst element—that the lawsuit has merit—is equally missing. Plaintiff has not offered any merits evidence and "[a]ttorney fees should not be awarded for a lawsuit that lacks merit, even if its pleadings would survive a demurrer." *Graham*, 34 Cal. 4th at 576. To establish merit, the court must make a determination that "defendant's conduct was required by law." *Id.* at 575. Although Plaintiff's "own allegations do not suffice," *Hackett*, 2009 WL 10725755, at *3, that is all Plaintiff has offered here. Indeed, on the factual record, Plaintiff fails on the merits in at least three separate ways. Each are discussed below.

### (i) Plaintiff has not put forth any evidence that consumers "commonly expect" the beverages to contain lime, pineapple, mango, or raspberry.

Plaintiff's entire lawsuit fails if he cannot establish that the Bai Cocofusions are commonly expected to contain lime, pineapple, mango, and raspberry in the form of "real fruit ingredients" rather than natural flavors. *E.g.*, Dkt. 37 ¶ 7; 21 C.F.R. § 101.22(i)(1)(i). If there is such a common expectation, then FDA regulations require the word "Flavored" on the label. But if there is no common expectation, "Flavored" is not required and Plaintiff's claims, seeking to impose liability for the allegedly missing word "Flavored," would be meritless and/or preempted. This Court agreed that Plaintiff must prove a common expectation, but denied Bai's Motion to Dismiss, holding that Plaintiff "plausibly alleges" that this beverage is one that is commonly expected to contain the characterizing ingredients. Dkt. 77 at 6.

But pleadings are insufficient to show merit for the catalyst theory: Plaintiff must show *evidence* of the requisite common expectation. *See, e.g.*, *Vargas*, 200 Cal. App. 4th at 1340 ("contentions do not supplant evidence"). Yet his Motion is devoid of evidence that consumers "commonly expect" anything of Bai's Cocofusions. Plaintiff has no experts and he took no discovery from Bai about any

common expectation. All that Plaintiff can point to *his own* testimony, as a layperson, as to: (1) how *he* interpreted the word and image of "lime" on the label, and (2) how *he* thinks "the average reasonable consumer" might interpret the label. *See* Mot. at 23. But this testimony is inadmissible for numerous reasons: it is irrelevant (not addressed to common expectation); beyond his personal knowledge; and improper lay opinion. *See* Fed. R. Evid. 401, 602, and 701. Plaintiff is not an expert in consumer perception of product labels, and he readily admitted at his deposition that he cannot speak for how any other consumer might read the label:

> Q. Your complaint is that the beverage indicated to you that it contained lime and it did not?
>
> A. Right.
>
> Q. And do you know, any personal knowledge, whether any other person in California shares that same concern that you have?
>
> A. I don't -- . . . And my lawyers might know. I don't know.

*See* Patchen Decl. ¶ 9, Ex. M at 172:4-14.[7]

Thus, on the critical factual issue—the existence of common expectation—Plaintiff has no evidence. And his implicit invitation that this Court improperly inject its personal view as to whether the label creates a common expectation, *see* Mot. at 23, wholly fails under judicial notice rules, *see* Fed. R. Evid. 201(b). Consumer common expectation is not a "fact" "not subject to reasonable dispute." Plaintiff's lack of evidence of common expectation ends the merits inquiry.

Much like the causation analysis, Plaintiff's lack of evidence stands in sharp contrast to compelling, conclusive evidence from Bai. The only evidence of what is commonly expected comes from Bai's expert, Adam Raycraft. In his expert opinion,

---

[7]    *See also id.* at 118:23-119:10 ("Do you have any personal knowledge one way or the other as to any common expectations related to the beverages having two ingredients, the two fruits? MR. BERNARDINO: Objection; calls for a legal conclusion, objection; attorney-client communication. You can answer. THE WITNESS: I can't. . . . Q. So you don't have any personal knowledge outside of potential attorney-client communications? A. Right.").

both identified in his August 6, 2020 disclosure and confirmed in his concurrently-filed sworn declaration, consumers do not commonly expect the Bai Cocofusions to contain lime, pineapple, mango, and/or raspberry as "real fruit" ingredients (such as lime juice), rather than as natural flavors. *See* Patchen Decl. ¶ 14, Ex. Q; Declaration of Adam Raycraft. Plaintiff did not offer his own expert or even rebut Mr. Raycraft's testimony on the issue of common expectation. Because the only competent and admissible evidence shows consumers do *not* commonly expect the non-coconut fruit flavors to be ingredients in the Bai Cocofusions, Plaintiff cannot establish that his claims have merit. *See Evans*, 2018 WL 6920674, at *10 (*citing Borad v. Grossmont Union High Sch. Dist.*, No. D056606, 2011 WL 982889 (Cal. Ct. App. Mar. 22, 2011) wherein the court reversed a fee award because plaintiff did not "present substantial evidence that his lawsuit had merit"); *see also Hackett*, 2009 WL 10725755, at *3 (rejecting claim for fees where plaintiff "offer[ed] no evidence to substantiate her claim that this lawsuit is meritorious" and put forth only her "own allegations").

>          (ii)    **Plaintiff has not put forth any evidence that his claims otherwise have merit.**

In addition to failing to provide any evidence that the Bai Cocofusion labels are unlawful, Plaintiff has no evidence on the merits of his claim that the labels are otherwise false or misleading under the CLRA, FAL, or UCL. To prevail on these claims on behalf of the class, Plaintiff would have to prove: (1) that a significant portion of reasonable consumers are likely to be misled by the labels; (2) that the challenged labeling is material to the class; and (3) that the class suffered injury. *See, e.g.*, *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003) (the reasonable consumer standard requires plaintiffs to show "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled"); *Low v. Trump Univ., LLC*, No. 10-CV-00940-GPC-WVG, 2016 WL 6732110, at *3 (S.D. Cal. Nov. 15, 2016) (to obtain a

1   classwide inference of reliance, plaintiff "must establish that the misrepresentations
2   were (1) material and that they were (2) uniformly made to the entire class").

3           During fact and expert discovery, Plaintiff developed no evidence as to any of
4   these elements—which is fatal to the merits of his class claims.  *See, e.g.*, *Astiana v.*
5   *Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013); *In re ConAgra Foods, Inc.*, 302
6   F.R.D. 537, 577 (C.D. Cal. 2014) (denying class certification where plaintiffs had
7   "no survey evidence concerning the actual reaction of consumers").   Nor did
8   Plaintiff develop, or offer evidence on this motion, of any of the four factors
9   necessary for injunctive relief.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388,
10  391 (2006) (four factors include "irreparable injury" and inadequacy of monetary
11  damages); *LegalForce RAPC Worldwide P.C. v. TTC Bus. Sols., LLC*, No. 17-CV-
12  07318-MMC, 2019 WL 6877197, at *2 (N.D. Cal. Dec. 17, 2019) ("even assuming
13  defendant has engaged in a [Section 17200 violation], plaintiff has failed to explain
14  why issuance of a permanent injunction is warranted, let alone offer evidence in
15  support thereof").   Likewise, Plaintiff did not proffer any expert as to the classwide
16  damages he claimed.  *Compare* Dkt. 37 ¶ 47 & p. 22 (alleging that the class paid "a
17  price premium"); Patchen Decl. ¶ 8, Ex. L (stating that Plaintiff would "retain a
18  testifying expert to opine on the proper measure of damages") *with* Patchen Decl.
19  ¶¶ 14-15.   In a false labeling case, Plaintiff cannot recover a full refund of the
20  purchase price; he can only recover "the difference between the market price actually
21  paid by consumers and the true market price that reflects the impact of the unlawful,
22  unfair, or fraudulent business practices."   *See Werdebaugh v. Blue Diamond*
23  *Growers*, No. 12-CV-2724-LHK, 2014 WL 2191901, at *22 (N.D. Cal. May 23,
24  2014).   But having proffered no expert testimony, Plaintiff has no evidence of
25  damages or injury suffered by the class.

26          Without *evidence* on numerous key elements of his claims, Plaintiff cannot
27  meet his burden of proving that Bai's label change "was required by law" and that
28  his CLRA, FAL, and UCL claims have merit.  *See Graham*, 34 Cal. 4th at 575.

**(iii)    Plaintiff does not have standing to pursue his claims.**

Finally, Plaintiff's lawsuit lacks merit because he lacks standing.  Specifically, Plaintiff lacks standing to seek an injunction; his claim thus lacks merit as to a theory that his lawsuit was a catalyst of the label change.  "California courts have repeatedly refuse[d] to award attorneys' fees to a party that lacks standing under the relevant statutory scheme."  *Henderson v. J.M. Smucker Co.*, No. 10-CV-4524-GHK-VBKX, 2013 WL 3146774, at *3 (C.D. Cal. June 19, 2013); *see also California for Population Stabilization v. Hewlett–Packard Co.*, 58 Cal. App. 4th 273, 296 (1997) ("It is illogical to claim that a party is entitled to attorney's fees pursuant to a statutory scheme wherein it has no standing to bring an action."); *Cornelius v. L.R. Cty. Metropolitan Transportation Authority,* 49 Cal. App. 4th 1761, 1779 (1996) (reversing trial court's award of attorneys' fees after concluding that plaintiff had no standing to bring those claims).

Under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), a consumer who previously was deceived by a product label "may" have standing to seek an injunction if they can adequately allege an "imminent or actual threat of future harm" in that they could be deceived by the label again in the future.  *Id.* at 970-72.  *Davidson* makes clear that a plaintiff must intend to purchase the product in the future to have standing to seek an injunction compelling a change to the label of that product.  *See Id.* at 969-70 & n.5 ("Davidson sufficiently alleges that she would purchase truly flushable wipes manufactured by Kimberly–Clark.").  Here, Plaintiff does not face imminent or actual threat of future harm because he will never purchase a Bai drink again.  Plaintiff admitted that (i) he does not intend to purchase any Bai Cocofusions in the future, Patchen Decl. ¶ 9, Ex. M, at 45:11-13; (ii) he would not buy Andes Coconut Lime if it only contained lime flavor, *id.* at 46:11-19;

and (iii) he would not buy Andes Coconut Lime if the label were changed to include the word "flavored," *id*. at 190:10-12; *id*. at 128:25-129:7.[8]

Under controlling Ninth Circuit law, these admissions preclude Article III standing for injunctive relief. And the consequence of that, for this Motion, is to preclude a finding that Plaintiff is "a successful party" in this lawsuit, which sought a label change via injunction. *See Graham*, 34 Cal. 4th at 570 ("in the context of section 1021.5, the term 'party' refers to a party to litigation").

## B. Plaintiff has not satisfied the remaining requirements for an award of attorney's fees under Section 1021.5.

In addition to failing to prove that he was a "successful" party under the catalyst theory, Plaintiff cannot satisfy the remaining requirements for an award of attorney's fees under Section 1021.5. As explained below, Plaintiff (i) has not established that the lawsuit "resulted in" the enforcement of an important right affecting the public interest, (ii) has not shown that the change conferred a significant benefit on the public, and (iii) has not established that the necessity and financial burden of private enforcement would make attorney's fees appropriate. Plaintiff bears "[t]he burden [of] establish[ing] each prerequisite to an award of attorney fees under section 1021.5," and he has not done so here. *Bui*, 230 Cal. App. 4th at 1365.

### 1. There is no evidence this lawsuit resulted in the enforcement of an important right affecting the public interest.

Although enforcement of the UCL and CLRA can meet the standard of "important interest," on the facts here, Plaintiff cannot prove that his lawsuit "has *resulted in* the enforcement of an important right affecting the public interest." Cal.

---

[8] Plaintiff's pleadings falsely alleged to the contrary. *See* Dkt. 37 ¶ 49 ("Plaintiff would like to and does intend to purchase the Antioxidant Beverages in the future, but is concerned about the inability to rely on the labeling of the Beverages."). While the false pleading may have allowed him to skirt prompt dismissal of his injunctive relief claim, it does not demonstrate merit under Section 1021.5. *Graham*, 34 Cal. 4th at 576. The further implications of the false pleading is addressed *infra*, Section IV(C).

Code Civ. P. § 1021.5 (emphasis added). As explained above, this lawsuit did not "result[] in" Bai's decision to change the label—that decision had been made years before and was well underway before the lawsuit was ever filed.

The requirement of proof of enforcement, not just an abstract "important right affecting the public interest," was confirmed in *Canyon Crest Conservancy v. Cty. of Los Angeles*, 46 Cal. App. 5th 398, 410-11 (2020). In that case, the defendants conceded that generally, alleged statutory violations under the California Environmental Quality Act "can involve important rights affecting the public interest," but argued that the specific litigation "did not vindicate any such important rights." *Id.* at 410. Affirming the trial court, the Court of Appeals held that "Appellant's suggestion that bringing a 'viable . . . claim' alone is sufficient to satisfy this prong is unsupported by any authority and ignores the statutory requirement that a party not only allege an important right *but actually vindicate that right by way of the litigation.*" *Id.* at 411 (emphasis added). Here, because Plaintiff failed to prove causation under the catalyst theory, and he also failed to demonstrate *any facts* establishing the merits of his claims, he also fails to prove that he "actually vindicate[d]" any important rights affecting the public interest.

### 2.   Plaintiff has not established that this litigation conferred a significant benefit on the public.

"In enacting section 1021.5, the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. Instead, in deciding whether to award attorney fees . . . a trial court should determine realistically the significance of the benefit, and the size of the class receiving the benefit, in light of all pertinent circumstances." *Baxter v. Salutary Sportsclub, Inc.*, 122 Cal. App. 4th 941, 945 (2004) (citations omitted). "The trial court *must* determine the significance of the benefit and the size of the class receiving that benefit . . . ." *Id.* (emphasis added).

1    *Baxter* confirms Plaintiff here fell far short of his evidentiary burden on this

2    element.  In *Baxter*, the plaintiff had "no personal knowledge of the defendant's

3    business, nor any damages caused to any members of the defendant's clubs"; "no

4    evidence was introduced of any actual loss or harm to any member of the defendant's

5    clubs"; and there was "no evidence . . . indicating how many people received

6    [defendant's] clarifying notice."  *Id*. at 946.  The conclusion: "a textbook example

7    of valueless litigation against a private party 'under the guise of benefiting the public

8    interest.'"  *Id*. (quoting *Comm. to Defend Reprod. Rights v. A Free Pregnancy Ctr.*,

9    229 Cal. App. 3d 633, 643 (1991)).

10    Here, on the *actual evidence* presented by Plaintiff, the *Baxter* conclusion is

11    the only permissible result.  Given that Plaintiff utterly failed to conduct necessary

12    discovery, it is unsurprising that his Motion provides *no evidence* of the number of

13    consumers purchasing the Bai Cocofusions; whether *any* consumer besides Plaintiff

14    was ever confused or misled by the old label; or of any damages caused to the public.

15    The only evidence in the record is that Plaintiff, once in his life, bought one bottle

16    of the Lime flavor.  And given that Plaintiff will not purchase a Cocofusion again,

17    the label change is of no benefit to him, especially because his claimed interest in

18    having Bai "follow the law" cannot possibly satisfy Article III.  *See* Dkt. 80-2 at

19    3 ¶ 5; *see also Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D.

20    Cal. 2012) ("courts will not adjudicate 'generalized grievances'").  The fact that

21    Plaintiff himself achieved nothing precludes fees.  *Ellis*, 2016 WL 5815734, at *9

22    ("Further, the Court declines to award fees to counsel when the named plaintiffs

23    have not received any benefit from the litigation. . . .  Attorneys who have achieved

24    no success for their own clients are not entitled to fees.").

25    At most, Plaintiff relies on rank speculation which the Court must exclude.

26    Fed. R. Evid. 602; *Ries v. Arizona Beverages USA LLC*, No. 10-CV-01139-RS, 2013

27    WL 1287416, at *5 (N.D. Cal. Mar. 28, 2013) ("rhetoric is no substitute for

28    evidence").  Plaintiff speculates "consumers *may* now benefit from cost savings,

they otherwise would not have had," but he concedes a fatal fact: "[t]he monetary value of Defendant's label change is not explored here."   Mot. at 16.[9]   The speculation continues.  Even though "[t]he Court must determine the size of the class who benefits from the relief granted," *Edwards v. Ford Motor Co.*, No. 11-CV-1058-MMA-BLM, 2016 WL 1665793, at *7 (S.D. Cal. Jan. 22, 2016), Plaintiff has absolutely no evidence of the "size of the class" receiving the benefit.  Rather, the only "evidence" is an attorney declaration, which provides speculative estimates based on an online article.  Dkt. 80-2 at 12-13 ¶ 13.  Bai objects to this impermissible hearsay, Fed. R. Evid. 801, and notes that (i) the article relied on *does not* contain the word "California" (raising questions as to any basis for Mr. Bernardino's $14 million figure) and (ii) the sales figures include *all* Bai Cocofusions—including the popular Coconut-only flavor that was never part of the lawsuit.  Mr. Bernardino's improper speculation continues when he claims—with no evidence or personal knowledge—that the beverages are sold through "hundreds of retail establishments" and "tens of thousands of such beverages are consumed in California each year."  Dkt. 80-2 at 13 ¶ 14.  But this is obviously speculative; he doesn't *know* these facts.

Mr. Bernardino then claims that Bai produced sales data for the Lime beverage.  *Id.* at 13 ¶ 15.  This is false; data on *average sales price* was produced by third-party IRI, but not data on the sales volume for any Cocofusion product.  Indeed, it is with no shortage of *chutzpah* that Mr. Bernardino asks "that this Honorable Court 'undertake the task' and inquire of Defendant the size of its consumer base for all of its Cocofusion beverages."  *Id.* at 14 ¶ 15.  In other words, Plaintiff's counsel is now asking *the Court* to do their jobs and gather information that they failed to

---

[9]    Indeed, the *only* evidence in this case regarding the pricing of Bai Cocofusion beverages confirms ***that the price remained the same before and after the label change***.  This was part of Defendant's opening damages expert report.  *See* Patchen Decl. ¶ 14, Ex. P at 6.  Plaintiff has no damages expert and has offered no rebuttal to Bai's expert report that there was no price change despite the label change.

during discovery.  Patchen Decl. ¶ 7.  But fact discovery is closed; Plaintiff's failure to obtain the information he needed for this Motion compels its denial.

In addition to Plaintiff's speculation on class size, sales volumes, and supposed "cost savings," Plaintiff has *no evidence* that, as explained above, there was a common expectation that the beverages contained real fruit; there was a common (mis)understanding of the labels; or the challenged labeling was material. In other words, *zero* evidence of any past harm to consumers that will be avoided in the future.  Plaintiff has no personal knowledge of what "an average reasonable consumer" expected; and he offered no expert testimony to fill that gap.  He has no survey expert to establish common expectation or consumer understanding.  He has no damages expert, and so has no basis for quantifying consumer harm.  Without these showings, there is no basis for this Court to conclude that *any* benefit—much less the statutorily required "significant benefit"—has been afforded to anyone.

Although courts are often willing to excuse some imprecision in the size of the class, the amount of the benefit, etc., that does not permit the court to abandon wholesale the requirement of an evidentiary showing of "significant benefit" and find that element satisfied—as Plaintiff attempts here—on pure speculation.  Finding a "significant benefit" on *this* evidentiary record would eviscerate the requirement and result in a conclusion contrary to the Legislature's clear intent *not* "to authorize an award of attorney fees in every case involving a statutory violation."  *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 939-40 (1979).  Plaintiff has failed to prove that Bai's conduct amounted to any statutory violation, nor has he established that "the gains which have resulted in a particular case" render this one of the special situations justifying an award of attorney's fees.  *See id.*

### 3. Plaintiff cannot establish that private enforcement was necessary or that the financial burden this case was justified.

Finally, Plaintiff contends that "private enforcement was necessary because no state agency or other public agency acted."  Mot. at 19.  But he does not cite any

*evidence* that he or any other consumer ever made any complaints to government officials about the Bai labels.  Nor does Plaintiff even offer any evidence for the financial burden component.

In *Bui v. Nguyen*, the court reversed an award of attorney's fees under Section 1021.5, finding that none of the declarations submitted by the plaintiff "offer[ed] any support for the court's factual finding that there had been 'various unsuccessful efforts to involve the [] regulatory authorities' or that '[t]here had apparently been prior complaints filed . . . .'"  230 Cal. App. 4th at 1371-72.  The court concluded that "neither declarant provided specific information about attempts of any kind to involve governmental entities" in seeking relief from defendant.  *Id*.  The same is true here—Plaintiff offers only a "nonspecific and conclusory" declaration that private enforcement was necessary because "Plaintiff's counsel are aware of no other pending litigation related to the issues presented in this action."  Dkt. 80-2 at 14 ¶ 16.  But Plaintiff's counsel says *nothing* about efforts to involve regulatory authorities like the FDA or the refusal of those authorities to act.[10]

Separate, but related, "[a] court looks at the approximate value of the class claims (not the individual claims) separate from the actual cost [of the litigation] to determine whether attorney's fees should be awarded to encourage the type of litigation at issue."  *See Evans*, 2018 WL 6920674, at *13.  Because Plaintiff chose not to disclose a damages expert, the Court cannot even begin to conduct this analysis to determine "the value of the class claims."  The evidentiary record here is even more empty than *Evans*: both involved claims of a $5 million minimum to

---

[10]   Indeed, the only evidence in the record is that the FDA *does* enforce 21 C.F.R. § 101.22(i)(1)(i).  In opposition to Bai's Motion to Dismiss, Plaintiff cited *three separate* FDA warning letters concerning the flavoring regulations.  Dkt. 48 at 23-24.   And those were letters directed to fairly obscure food and beverage manufacturers; if the FDA was acting against those small entities, it certainly had the ability to act against Bai.  An award of fees here will only incentivize plaintiffs' counsel to bring more claims of trivial value, that are expensive to defend, in a field where it is patent that the FDA is exercising its enforcement powers.

1   establish CAFA jurisdiction, but at least in *Evans* the plaintiff claimed "hundreds of

2   currently uncompensated hours", *id.* at *13, a factual claim non-existent on this

3   record.  The *Evans* court found that larger evidentiary record insufficient to make

4   necessary findings and denied the motion.  *A fortiari*, denial is warranted here.

5           **C.    Awarding attorney's fees would be unjust.**

6           Even if Plaintiff had met the statutory requirements under Section 1021.5—

7   and he has not—this Court retains discretion to deny a fee award if an award would

8   be unjust.  *Serrano v. Unruh (Serrano IV)*, 32 Cal.3d 621, 633, 639 n.28 (1982); *see*

9   *also Carlsbad Police Officers Ass'n v. City of Carlsbad,* 49 Cal. App. 5th 135, 145

10  (2020) (even if Section 1021.5 criteria are met, fees can be denied if "special

11  circumstances would render an award of 1021.5 fees unjust").  Here, Plaintiff's

12  Section 1021.5 Motion is shadowed by a series of troubling ethical breaches by

13  Plaintiff's counsel, which warrant a finding that awarding fees would be unjust.  *See*

14  *Image Technical Service, Inc. v. Eastman Kodak Co*., 136 F. 3d 1354, 1358 (9th Cir.

15  1998) (ethical breach is a special circumstance precluding an award of fees).

16          *First*, Plaintiff's counsel has made clear—both in his papers and in the meet-

17  and-confer—that they are abandoning the putative class so long as they get a payday.

18  *See* Dkt. 80-2 at 15 ¶ 17 ("[I]f Plaintiff prevails in this motion, he will dismiss his

19  action and stop all further litigation to obtain damages . . . .").  On Plaintiff's own

20  account, offered in response to this Court's Order to Show Cause, the class claim

21  that counsel is abandoning is worth over $5 million.  Dkts. 10, 11 at 7-8.  Plaintiff's

22  offer—made in writing in a Court submission—compels denial of this Motion.

23          In *Cal-Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1

24  (1997), sole putative class counsel (Mr. Khourie) offered UPS a deal: in exchange

25  for a payment to Mr. Khourie, Mr. Khourie would cause the named plaintiff to

26  release UPS, and Mr. Khourie "would abandon and dismiss [the putative class]

27  action" and "the class would receive nothing."  *Id*. at 6-7.  UPS declined the offer.

28  In affirming disqualification of Mr. Khourie, the Court of Appeal made plain the

"magnitude of the ethical lapse"—a "colossal misdeed"—in that "offering to dismiss a client's action or forego filing a valid cause of action in return for payment of fees directly to the attorney creates a conflict of interest and constitutes an obvious breach of the attorney's fiduciary obligation to the client." *Id*. at 11, 13 (citations omitted). This is true, even if (like in *Cal-Pak*) no class is yet certified; putative class counsel owes fiduciary duties to the putative class. *See Koby v. ARS Nat'l Servs., Inc*., 846 F.3d 1071, 1079 (9th Cir. 2017); *In re General Motors Corp. Pick-Up Truck Fuel Prod. Liab. Litig*., 55 F.3d 768, 801 (3rd Cir. 1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."); Fed. R. Civ. P. 23(g)(2)(A) Advisory Committee's Note (2003) ("an attorney who acts on behalf of the class before certification must act in the best interests of the class as a whole").

In some respects, Plaintiff counsel's conduct here is more troubling than in *Cal-Pak. Cal-Pak* involved a private scheme that would have incidentally impacted the court, by dismissal. *Cal-Pak* nevertheless held that given the judicial obligation to protect "the integrity of the judicial process," "the failure of the trial court to take immediate remedial action . . . would constitute an abdication of judicial responsibility, violating the public trust and exposing judicial institutions to public obloquy." *Cal-Pak*, 52 Cal. App. 4th at 13. By contrast, here, Plaintiff *invites* the Court to join its scheme—the abandonment of the putative class is conditional on this Court's granting the instant Motion. Because granting Plaintiff's Motion would make the Court complicit in counsel's misconduct, the only outcome consistent with *Cal-Pak* is to deny the Motion.[11]

---

[11]     Indeed, Plaintiff's counsel now finds themselves in a self-inflicted Catch 22. A necessary element for the catalyst theory is "a factually meritorious lawsuit." *Vargas*, 200 Cal. App. 4th at 1340. But arguing the underlying action is meritorious would concede the ethical breach in offering to abandon that meritorious action on behalf of the putative class members. *See Cal-Pak*, 52 Cal. App. 4th at 11. The only

1    Second, Plaintiff's counsel have repeatedly breached their duties to the Court.

2    *See* Fed. R. Civ. P. 11 (b) (3) (counsel's signature on pleading certifies that, after

3    reasonable investigation, the "factual contentions have evidentiary support"); Cal.

4    R. Prof. C. 3.3(a)(1) ("A lawyer shall not: knowingly make a false statement of fact

5    or law to a tribunal or fail to correct a false statement of material fact or law

6    previously made to the tribunal by the lawyer."); L.R. 83-3.1.2.  The examples are

7    numerous.  Each of the three complaints alleged that Plaintiff purchased all four

8    flavors of the Bai Cocofusions, when in fact he has only purchased the Lime flavor.

9    *Compare* Dkt. 37 ¶ 11 *with* Patchen Decl. ¶ 9, Ex. M, at 48:11-49:1.  Each complaint

10   also expressly alleged that Plaintiff "regularly purchase[d]" Bai beverages during

11   the class period, but Plaintiff admitted that he only purchased one of the products

12   once.  *Compare* Dkt. 37 ¶ 11 *with* Patchen Decl. ¶ 9, Ex. M, at 42:19-25, 51:7-52:4.

13   Each complaint alleged that Plaintiff desired to purchase Bai Cocofusions in the

14   future; Plaintiff disclaimed that at deposition.  *Compare* Dkt. 37 ¶ 49 *with* Patchen

15   Decl. ¶ 9, Ex. M, at 45:11-13.  The reasonable pre-filing investigation required by

16   Rule 11 would have exposed each of these allegations as lacking evidentiary

17   support—their presence in all three versions of the complaint demonstrates either

18   that counsel never conducted one or that the complaints were knowingly false.

19   Moreover, at no point in time has Plaintiff's counsel taken *any step* to correct these

20   false allegations; instead, they repeated them multiple times.

21        In a transparent attempt to shift the focus away from their own conduct,

22   Plaintiff's counsel complains that Bai continued to defend this litigation while

23   "failing to inform this Honorable Court that the specific and primary relief Plaintiff

24   sought, had already been granted."  Mot. at 6.  This is both wrong and irrelevant.  It

25   is irrelevant because Plaintiff identifies no obligation to make such disclosure;

26

27   way to avoid the ethical breach is to argue that the putative class claims have no
     merit, but that argument vitiates a necessary element for the catalyst theory.  In short,
28   either circumstance requires that this Motion be denied.

indeed, Bai's first Motion to Dismiss was a Rule 12(b)(6)/facial Rule 12(b)(1) motion, which means Plaintiff's allegations (including the false ones) were assumed to be true. *See McFadden v. Nat'l Title Co.*, No. 11-CV-04175S-JOP-LAX, 2011 WL 13220462, at *1 (C.D. Cal. Aug. 10, 2011). And, as explained above, it is wrong: Bai did repeatedly disclose the label change.

*Third*, Plaintiff's counsel's lack of diligence breached their duty of competence. The abject failure to pursue discovery with diligence generally—and the label change specifically—is well-documented; the record is in Bai's *ex parte* application to quash Plaintiff's belated deposition notice. Dkt. 63. And the lack of diligence continued thereafter. Plaintiff's counsel did not serve either an opening or rebuttal expert report in this case on any issue. Patchen Decl. ¶ 15. That, coupled with failure to diligently pursue fact discovery, leaves Plaintiff with no evidentiary basis for Rule 23 numerosity, commonality, or typicality showings and exposes Plaintiff and Plaintiff's counsel to serious challenges to adequacy of both the class representative and class counsel. Nor, as described above, does Plaintiff have any evidence on the key merits issues. Summary judgement appears inevitable.

Undoubtedly, the "special circumstances" rule should be applied sparingly. But if not here, then when? Here, Plaintiff filed three separate complaints with the Court that contained numerous false allegations. Those were never corrected, even when the falsity was laid bare by Defendant. Rather, that blasé attitude found echo in the utter lack of diligence in fact discovery and expert disclosures. And when, finally, Plaintiff's counsel belatedly discovered the label change, the response was to offer—*in writing*—to wholly abandon the putative class's damages claim so long as Plaintiff's counsel got paid. An award of fees on these facts would be unjust.

## V.   **CONCLUSION**

For the foregoing reasons, Bai respectfully requests that the Court deny Plaintiff's Motion for Attorney's Fees.

Dated:  September 17, 2020          Respectfully submitted,

By: */s/ Jonathan Patchen*
**BAKER BOTTS L.L.P.**
Jonathan Patchen (Cal. Bar No. 237346)
jonathan.patchen@bakerbotts.com
Ariel D. House (Cal. Bar No. 280477)
ariel.house@bakerbotts.com
101 California Street, Suite 3600
San Francisco, CA 94111
Telephone:   (415) 291-6209
Facsimile:    (415) 291-6309

Monica H. Smith (*pro hac vice*)
monica.smith@bakerbotts.com
2001 Ross Avenue, Suite 900
Dallas, TX 75201-2980
Telephone:   (214) 953-6929
Facsimile:    (214) 661-4929

*Attorneys for Defendant Bai Brands, LLC*