UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SCHWARTZ,<br><br>           Plaintiff,<br><br>     v.<br><br>BAI BRANDS, LLC, a New Jersey Limited Liability Company,<br><br>           Defendant. | Case No. LA CV 19-06249-SPG-RAO<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S APPLICATION TO FILE DOCUMENT UNDER SEAL [ECF NOS. 108, 109]** |

Before the Court are Plaintiff Daniel Schwartz's ("Plaintiff") and Defendant Bai Brands, LLC's ("Defendant") Cross Motions for Summary Judgment. (ECF No. 108). Both parties submitted supplemental memoranda in support of their motions. (ECF Nos. 112, 113). The Court heard oral argument on August 10, 2022, and took the matter under submission. (ECF No. 118). For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. The Court also **GRANTS** Defendant's application to file document under seal. (ECF No. 109).

## I. BACKGROUND

### A. Factual Background

The following summarized facts are uncontroverted, unless otherwise stated. *See* (ECF No. 108-2 (Statement of Uncontroverted facts "SUF")).[1]

On October 5, 2018, Plaintiff purchased a bottle of Bai Cocofusion at a Ralph's grocery store for $2.05. (SUF D7, D8, D9, D11). At the time of purchase, Defendant sold four flavor varieties of Bai beverages, "Andes Coconut Lime"; "Puna Coconut Pineapple"; "Maui Coconut Raspberry";[2] and "Malawi Coconut Mango" (collectively, the "Beverages" or "Cocofusion beverages"). (SUF P1). Plaintiff purchased Defendant's "Andes Coconut Lime" Cocofusion beverage because the front-facing label caused him to believe it contained lime. (SUF P10). Plaintiff has never purchased any other variety. (SUF D25). The front labels on the Cocofusion beverages display the image of a split-open coconut

---

[1] When determining a motion for summary judgment, the Court only considers evidence admissible at trial, though the form may differ at the summary judgment stage. *Godinez v. Alta-Dena Certified Dairy LLC*, No. CV 15-01652 RSWL (SSx), 2016 WL 6915509, at *3 (C.D. Cal. Jan. 29, 2016). The Court has reviewed the entire record, including the parties' SUF, objections, and evidence. The Court discusses only the facts that are relevant to its decision. The Court notes that some of the parties' purportedly disputed facts are not actually controverted by the evidence. For example, Defendant made a plain statement of the fact that "[t]he deadline to move for class certification was on November 9, 2020," which is evident from the record. *See* (SUF D44; ECF No. 53). Instead of stating that fact is undisputed, Plaintiff offered a protracted statement regarding the reasons why he did not move for class certification, some of which are incorporated by reference from other responses, and concludes that he is the prevailing party. *See* (D44, Plaintiff's Response). And this is just one of several examples. In those instances where a party has failed to properly address the other party's assertion of fact, as is required by Rule 56(c), the Court considers those facts undisputed for purposes of the motions. *See* Fed. R. Civ. P. 56(e)(2); L.R. 56-3. Further, it is not the Court's practice to rule on each objection individually, nor is it required to do so. To the extent that the Court relies on evidence that is the subject of an objection, the Court overrules the objection. To the extent the Court does not rely on evidence objected to by the parties, the objections are overruled as moot.

[2] Defendant discontinued the Bai Cocofusion Maui Coconut Raspberry flavor in 2018. (SUF D26, P16).

alongside the other secondary fruits (e.g., lime, pineapple, and mango). (SUF P1, P3, P5). The Beverages list the primary flavor, coconut, as an ingredient. (SUF D28). Lime, pineapple, and mango are not included on the Beverages' ingredient lists. (SUF P2, P4, P5).

In January 2017, Dr Pepper Snapple Group ("DPSG"), acquired Bai and began reviewing the Beverages' labels. (SUF D89; Ex. D1 ¶ 5). On or about September 2017, Defendant's regulatory group "decided to add the word 'Flavored' after the named fruit(s) on the front panel of the label" for both the Cocofusion beverages as well as Bai Bubbles, a similar beverage product line. (SUF Ex. D1 ¶ 6). That same month, Defendant approved finished labels for Bai Bubbles including the word "Flavored" on the front panel. (SUF Ex. D1 ¶ 7; Ex. D1 at 10–13). Defendant waited to update the Cocofusion beverages' labels because, at that time, Defendant was updating the Beverages' formulas, and therefore sought to make all the changes to the Cocofusion beverages at once to "avoid introducing multiple new versions of the product labels within a short timeframe." (SUF Ex. D1 ¶ 9).

On February 28, 2019, once the formula update was complete, Defendant issued a Label Information Note ("LIN") for the Puna Coconut Pineapple flavor. (SUF D100, D101). A LIN generally consists of new proposed language for a product's label and ingredients. (SUF D100). On April 10, 2019, Defendant issued LINs for the Coconut Lime and Malawi Coconut Mango flavors. (SUF D100–D103). The Cocofusion LINs proposed adding the word "Flavored" to the Beverages' labels. (SUF D95, D99–D103). Defendant issued the finalized labels for the Cocofusion beverages with the addition of the word "Flavored" on or about July 16, 2019. (SUF D104).

Cocofusion beverages displaying the updated labels with the word "Flavored" were available on retail shelves in California by the end of January 2020. (SUF D107). Currently, the Beverages' labels include the word "Flavored," and read as "Coconut Lime Flavored," "Coconut Pineapple Flavored," and "Coconut Mango Flavored." (SUF D108, P13, P14, P15, P17).

### B. Procedural History

On July 10, 2019, Plaintiff filed this putative class action against Bai Brands, LLC and Dr. Pepper Snapple Bottling Group. (ECF No. 1). Subsequently, Plaintiff filed the operative Second Amended Complaint ("SAC") against only Bai, asserting claims for violations of California's: (1) Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; (2) False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (3) Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. *See* (ECF No. 37, SAC ¶¶ 61–93). In the SAC, Plaintiff sought declaratory and injunctive relief, restitution, and damages. *See* (*id.* ¶¶ 22–23).

The deadline for Plaintiff to move for class certification was November 9, 2020. (ECF No. 53). Plaintiff did not move for class certification by that deadline. (SUF D45; ECF No. 90). Instead, on November 9, 2020, Plaintiff filed a status report stating that he had decided to forego moving for class certification. (ECF No. 90; SUF D44, D45; Ex. D6 ¶ 14).

On September 2, 2020, Plaintiff filed a motion for attorney fees pursuant to California Code of Civil Procedure ("CCP") section 1021.5. (ECF No. 80). On November 24, 2020, Defendant moved for summary judgment. (ECF No. 92). On September 17, 2021, the Court denied both motions without prejudice, requested the parties refile their respective motions as cross-motions for summary judgment, and specifically requested that the parties "address, with citations to evidence, whether [P]laintiff is the prevailing party." (ECF No. 105).

On November 19, 2021, both parties filed cross-motions for summary judgment. (ECF No. 108). On December 9, 2021, both parties submitted supplemental memoranda in support of their motions. (ECF Nos. 112, 113). Although Plaintiff does not expressly renew his previously filed request for the award of attorney's fees under CCP § 1021.5, he states in a footnote that he filed his Motion for Summary Judgment to adjudicate the issue of whether Plaintiff is the prevailing party. *See* (ECF No. 113 at 1 n.2).

The Court heard oral argument on August 10, 2022, and thereafter took the matter under submission. (ECF No. 118 (the "August 2022 Hearing")).

## II. LEGAL STANDARD

Summary judgment is appropriate where the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For the purposes of summary judgment, a court must view the evidence in the light most favorable to the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function at this stage is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). However, a principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Therefore, a court must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

## III. DISCUSSION

Plaintiff moves for summary judgment arguing he is entitled to a permanent injunction correcting the front-facing label on Defendant's Cocofusion Beverages. Plaintiff also asserts that he is the prevailing party. Defendant moves for summary judgment arguing Plaintiff lacks Article III standing to obtain a permanent injunction; Plaintiff has failed to establish a violation of the applicable Food and Drug Administration

regulation; Plaintiff's state law claims are preempted by federal law; and Plaintiff failed to present evidence that reasonable consumers are likely to be deceived. (*Id*. at 35-44). For the reasons set forth below, the Court finds Plaintiff lacks Article III standing and grants summary judgment in favor of Defendant.[3] The Court therefore denies as moot Plaintiff's motion for summary judgment, insofar as it argues Plaintiff is entitled to injunctive relief. The Court also rejects Plaintiff's assertion that he is the prevailing party. The Court will address each issue in turn.

### A. Defendant is Entitled to Summary Judgment Due to Plaintiff's Lack of Article III Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the "irreducible constitutional minimum of standing," a plaintiff bears the burden of establishing three elements: (1) the plaintiff suffered an injury in fact; (2) the injury is fairly traceable to the defendant's challenged conduct; and (3) the injury is likely redressable by a court's favorable decision. *Id.* at 561-562; *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). The three elements are not mere pleading requirements, but rather an indispensable part of the plaintiff's case. *Lujan*, 504 U.S. at 561. "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson*, 889 F.3d at 967.

At each stage of a suit, each element must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Hence, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.*; *see also Maya v. Centex Corp.*, 658 F.3d 1060,

---

[3] For this reason, the Court does not reach Defendant's remaining arguments in support of summary judgment.

1068 (9th Cir. 2011). Whereas in response to a summary judgment motion, "the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" which are to be taken as true for purposes of summary judgment. *Lujan*, 504 U.S. at 561 (citing Fed. R. Civ. P. 56(e)).

Here, Plaintiff's counsel confirmed at the August 2022 Hearing that the *only* remedy Plaintiff seeks at this stage is injunctive relief. (ECF No. 118). The Court finds that Plaintiff has not made the requisite showing of either an injury in fact or redressability to maintain Article III standing for such relief.

    1. <u>Injury in Fact</u>

Injunctive relief, which Plaintiff seeks, is a prospective remedy. *See Davidson*, 889 F.3d at 967. Thus, a party seeking such relief must show the threat of injury is "actual and imminent, not conjectural or hypothetical." *Id.* (internal quotation omitted). "In other words, the threatened injury must be *certainly impending*" and "allegations of *possible* future injury are not sufficient." *Id.* (internal quotations omitted, emphasis in original). If "standing is premised entirely on the threat of repeated injury, a plaintiff must show a sufficient likelihood that he will again be wronged in a similar way." *Id.*

In support of its summary judgment motion, Defendant argues that Plaintiff cannot seek injunctive relief because Plaintiff testified he does not intend to purchase the Beverages in the future. (SUF D80). Defendant points to the following testimony from Plaintiff's deposition:

 Q: Do you ever intend to buy [Coconut Lime Cocofusion] again in the future?
 A: **No.**
 Q: Would you, even if the label said or the advertisement said, 'We have no lime,' would you be then interested in buying and consuming the product?
 A: A product labeled lime that also claims to have no lime?
 Q: No, I'm saying a label that says yes, it's lime flavored but does not have lime."
 . . .
 A: No.

| | | |
|---|---|---|
| Q: | **So even with that label change, you still would not be interested in buying it?** | |
| | . . . | |
| A: | **Correct.** | |
| | . . . | |
| A: | Can I say something? **This whole situation has soured me on the product line Bai**. | |
| Q: | Are you inclined not to buy any Bai products going forward beyond just this one? | |
| A: | **That's correct.** | |
| | … | |
| A: | So I think if - - if I picked up the bottle and it said "Andes coconut lime flavored"; right, **I mean I probably wouldn't have bought it then**. | |

(SUF D80, D81, D83; Ex. D6 at 103, 104, 122, 125 (emphasis added)).[4]

In response, Plaintiff argues that his personal feelings and intentions are irrelevant because this is a putative class action and "there is no admissible evidence that other members of the putative class are not likely to be misled." (ECF No. 113 at 12). However, this is *not* a class action. The deadline for filing a motion for class certification was November 9, 2020, and, on that day, Plaintiff filed a status report stating he would not be moving to certify a class of consumers. (ECF Nos. 53, 90; D44, D45; Ex. D6 ¶ 14). Under the circumstances, Plaintiff's own feelings and intentions are very much relevant to establish Article III standing under *Davidson*.[5]

---

[4] In the SAC, Plaintiff alleged he was deceived by defendant's labeling, and "would like to and does intend to purchase the [Cocofusion beverages] in the future, but is concerned about the inability to rely on the labeling of the Beverages." *See* (SAC ¶¶ 11, 49). The Court found these allegations sufficient to survive a motion to dismiss. (ECF No. 77 at 10-12). However, since that motion Plaintiff has unequivocally stated in his deposition testimony that he will not purchase a Cocofusion beverage in the future.

[5] Plaintiff also mistakes statutory standing with Article III standing. (ECF No. 113 at 6 ("As a person who purchased a product that he would not have purchased if the product had been properly labeled, . . . Plaintiff demonstrates his economic injury gives him standing.")). While Plaintiff's injury may be sufficient to confer standing under the UCL, FAL, and CLRA, the issue before the Court is whether Plaintiff demonstrated "a sufficient likelihood that he will again be wronged in a similar way" to satisfy Article III standing to pursue a claim for injunctive relief. *See Davidson*, 889 F.3d at 967. Because the Court

The Ninth Circuit's decision in *Lanovaz v. Twinings North America, Inc.*, 726 F. App'x 590 (9th Cir. 2018) is instructive. There, the Ninth Circuit affirmed a district court's order granting summary judgment in a false-advertising suit for lack of standing. The Ninth Circuit explained that while "'a previously deceived plaintiff' suing under the UCL, FAL, and CLRA 'may have standing to seek injunctive relief,' the plaintiff must still show 'that she faces an imminent or actual threat of future harm caused by [the defendant's] allegedly false advertising.'" *Id.* (citing *Davidson*, 889 F.3d at 970). The plaintiff admitted at her deposition that she would not purchase the defendant's products again, "even if the company removed the allegedly misleading labels." *Id.* at 591. The Ninth Circuit held that she thus lacked standing despite conflicting evidence that she may "consider buying" the products in the future. *Id.* (citing *Lujan*, 504 U.S. at 564 (A "'some day' intention[ ]— without any description of concrete plans, or indeed even any specification of *when* the some day will be—do[es] not support a finding of the 'actual or imminent' injury that" Article III requires) (emphasis in original)); *see also Carney v. Adams*, 141 S. Ct. 493, 502 (2020) ("an injury in fact requires an intent that is concrete.").

Similarly, in *Guzman v. Polaris Industries Inc.*, No. 8:19-cv-01543-FLA (KESx), 2021 WL 2021454, at *10–11 (C.D. Cal. May 12, 2021), the district court found a plaintiff's testimony that "he likely would not have purchased the [product] if he had to do it all over again" was not enough to satisfy Article III standing. Relying on *Lanovaz*, the court granted summary judgment because there was "no sufficient likelihood [plaintiff] would purchase another [product] and again be wronged in a similar way." *Id.* (internal quotation omitted). *See also Rodriguez v. Just Brands USA, Inc.*, No. 2:20-CV-04829-ODW (PLAx), 2021 WL 1985031, at *4-5 (C.D. Cal. May 18, 2021) (finding allegation that plaintiff "'may' purchase the product in the future" was insufficient to confer Article III standing); *Hanna v. Walmart Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020) (finding plaintiff's claim that she "may purchase" the

---

finds that Plaintiff lacks Article III standing, it does not address whether Plaintiff has statutory standing under the UCL, FAL, or CLRA.

product if it was reformulated insufficient for standing); *Anthony v. Pharmavite*, No. 18-CV-02636-EMC, 2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019) (same).

Here, Plaintiff repeatedly stated in his deposition testimony that he will not purchase a Cocofusion beverage in the future. (SUF D80, D81, D83, Ex. D6-E). Plaintiff's stated intent is far more definitive than in *Lanovaz* or *Guzman*. He has given no indication of any desire to purchase the Beverages again, let alone the requisite concrete intent to sustain Article III standing. Accordingly, Plaintiff has not shown that he will "again be wronged in a similar way" to demonstrate the requisite injury in fact for standing purposes. *See Davidson*, 889 F.3d at 967.[6]

### 2. Redressability[7]

Similarly, the Court finds that Plaintiff has not satisfied his burden of establishing that a favorable decision by this Court would redress Plaintiff's alleged injury.

---

[6] Plaintiff cites to *Henderson v. Gruma Corporation*, No. CV 10-04173 AHM (AJWx), 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) to argue that "[i]t is irrelevant that Plaintiff may not be at risk of future harm because Plaintiff is seeking to maintain the relief he has already achieved." (ECF No. 113 at 12). The court in *Henderson* found that plaintiffs had standing as representatives of a class action where the defendant had not "presented evidence or even alleged that it has removed its allegedly misleading advertising from its products." 2011 WL 1362188, at *8. Even though the plaintiffs knew the truth about defendant's products, the court recognized that "as representatives of a class," they should "be entitled to pursue injunctive relief on behalf of all consumers." *Id.* Here, contrary to the facts in *Henderson*, Plaintiff has no intention of purchasing the Beverages in the future and does not represent a class of consumers. Plaintiff reliance on *Henderson* is therefore misplaced. *See Lanovaz*, 726 F. App'x at 591. Plaintiff's reliance on *Fortyne v. American Multi-Cinema, Inc.*, No. CV0105551NMJWJX, 2002 WL 32985838 (C.D. Cal. Oct. 22, 2002) fails for a similar reason. In *Fortyne*, the court found plaintiff had Article III standing to because his "intent to return to Defendant's theater [wa]s undisputed" and therefore he faced imminent future harm. *Id.* at *7. Here, in contrast, Plaintiff does not intend to purchase any of the Beverages again in the future.

[7] Plaintiff must satisfy all three elements of Article III standing. *See Lujan*, 504 U.S. at 560. Because the Court finds that Plaintiff cannot demonstrate a sufficient likelihood of future injury, it need not address whether his injury is likely redressable by a favorable decision. Nonetheless, for the sake of completeness, the Court considers whether Plaintiff satisfies the redressability element for Article III standing.

The Article III case or controversy requirement prevents federal courts from deciding "questions that cannot affect the rights of litigants in the case before them." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (internal quotation marks and citation omitted). Where a federal court cannot redress the plaintiff's injury with a favorable decision, the case is considered moot and must be dismissed. *See, e.g.*, *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[N]o federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury."). A case becomes moot "when the parties lack a legally cognizable interest in the outcome." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1020 (9th Cir. 2010) (internal quotation marks and citation omitted). A federal action should be "dismissed as moot when, by virtue of an intervening event," a federal court cannot grant "any effectual relief" in favor of the party seeking relief. *See Calderon v. Moore*, 518 U.S. 149, 150 (1996); *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.").

Here, Plaintiff initially sought monetary and injunctive relief. *See* (SAC, Prayer for Relief). However, since learning that Defendant added the word "Flavored" to the Cocofusion beverages, Plaintiff has stated numerous times that he "is no longer seeking any remedy from this Honorable Court."[8] (ECF No. 92-1 at 30). Specifically, Plaintiff

---

[8] The Court finds that Plaintiff's assertions in briefs qualify as judicial admissions. *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (*en banc*) ("statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court."); *see also Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir. 2003) ("We have discretion to consider a statement made in briefs to be a judicial admission, binding on both this court and the trial court.") (internal citations omitted). "For purposes of summary judgment, the courts have treated representations of counsel in a brief as admissions even though not contained in a pleading or affidavit." *Id.*; *see also Miramontes v. Mills*, No. CV 11-8603 MMM (SSx), 2015 WL 7566491, at *3 n.25 (C.D. Cal. Nov. 24, 2015) ("District courts in this circuit have consistently applied this doctrine in the context of motions for summary judgment.").

asserts that he no longer seeks damages. *See* (*id.* at 4 ("Plaintiff Schwartz was not interested in two dollars in damages"); SUF D32 ("Because Defendant has made the changes Plaintiff requested in his Demand Letter, and prayed for in his Complaint, First Amended Complaint and Second Amended Complaint, Plaintiff is no longer pursuing monetary damages")). And Plaintiff's counsel again confirmed during the August 2022 Hearing that Plaintiff does not seek monetary relief. Moreover, Plaintiff has repeatedly acknowledged that the relief he seeks through an injunction has already been achieved. (ECF No. 108-1 at 21 ("Plaintiff has personally approved of the change Bai has made to its advertising practices and is satisfied that the current change to the front-facing labels on the packaging of Bai's Cocofusion beverages accomplishes what he set out to do by commencing and prevailing in this action"); SUF P59 ("The relief sought in Plaintiff's *Second Amended Complaint* has been achieved by Defendant's change in the labels of Defendant's Cocofusion beverages."); SUF D109 ("It is without dispute, that the change on Defendant's front-facing labels on the bottle of Defendant's Cocofusion products satisfies Plaintiff and is exactly the primary relief sought by Plaintiff . . . .").

      Nevertheless, Plaintiff cites to recent screenshots of Cocofusion labels on Defendant's website that do not have the newly added word, "Flavored" (SUF Exs. P3, P32, P33, P34; ECF No. 113 at 9), and argues that the "online advertisements demonstrate that Bai continues to use its prior, unlawful front-facing labels in advertising its Cocofusion beverages." (ECF No. 108-1 at 55). In response, Defendant contends that the Court should not consider newly offered evidence of Defendant's website because Plaintiff never produced or disclosed the purported online advertisements in discovery, and Plaintiff did not see or rely on any online advertisements before he purchased his Cocofusion beverage. The Court agrees that Plaintiff, acting in a non-representative capacity as the sole consumer of Defendant's Cocofusion Beverages in this suit, cannot challenge online advertisements that he never saw and upon which he never relied.

      "[C]onsumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance' on the misrepresentation and harm." *Sateriale v. R.J. Reynolds*

*Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012). Similarly, because FAL and UCL claims centered on a misrepresentation are "based on a fraud theory involving false advertising and misrepresentations to consumers," a plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326-27 (2011) (internal quotations omitted). Courts have recognized there can be no actual reliance where the buyer did not see an alleged misrepresentation before purchasing the product. *See Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (holding claims were properly dismissed because the plaintiff did not see the allegedly offending statements before he purchased the product); *Durell v. Sharp Healthcare*, 183 Cal.App.4th 1350, 1363 (2010) (holding there was no reliance where "SAC [did] not allege [plaintiff] ever visited [defendant's] Web site"). Accordingly, a party may not challenge statements or advertisements that he never saw. *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1197 (N.D. Cal. 2014).

In the present case, Plaintiff has not identified any online advertisements in the SAC and does not claim that he saw any online advertisement regarding the Beverages before he purchased the Coconut Lime Cocofusion beverage at a Ralph's grocery store. To the contrary, Plaintiff asserts that he "purchased Defendant's Cocofusion 'Andes Coconut Lime' beverage . . . because the front-facing label caused him to believe it contained lime." (SUF P10). Further, the screenshots of online advertisements were purportedly taken by Plaintiff's counsel on November 4, 2021, more than three years *after* Plaintiff purchased the Beverage. (SUF Ex. P3 at 12-20). Additionally, in response to Defendant's interrogatory requests, Plaintiff did not identify any online marketing, advertisements, or promotions Plaintiff had seen, heard, or read prior to his purchase of the Cocofusion beverage. (SUF Ex. D6 at 376). Although Plaintiff's counsel argued during the August 2022 Hearing that Plaintiff was "duped" into thinking that Defendant corrected its labels because Defendant continues to advertise the Cocofusion beverages online without the word "Flavored," (ECF No. 118), counsel also confirmed that Plaintiff only reviewed the

Cocofusion beverages' printed labels before his purchase and neither saw nor relied on any advertisements. Accordingly, Plaintiff cannot challenge Defendant's online advertisements because he provides no evidence that he ever saw them. *See Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) ("If Plaintiffs did not view Apple's statement until after suffering injury, then viewing the statement could not have been the 'immediate cause' of the injury.").

In sum, given Plaintiff's repeated admissions that he is satisfied with Defendant's new labels and does not seek monetary damages, the remedy he seeks from the Court likely would not redress his alleged injury. Therefore, Plaintiff's has not satisfied his burden of demonstrating the element of redressability, and his claim must be dismissed for lack of Article III standing. *See Uzuegbunam*, 141 S. Ct. at 801 ("Because redressability is an irreducible component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury") (internal quotations and citation omitted).

### B. Plaintiff is Not a "Prevailing" or "Successful Party"

Plaintiff moves for summary judgment arguing that he is entitled to injunctive relief[9] and that he is the "prevailing party." It should be noted that Plaintiff has not expressly renewed his previously filed motion for attorney's fees under CCP § 1021.5. Nevertheless, because the Court is granting Defendant's motion for summary judgment and Plaintiff argues he is the prevailing party, the Court finds this issue ripe for determination.[10]

---

[9] Because the Court finds that Plaintiff lacks standing, the Court declines to consider the merits of Plaintiff's motion for summary judgment, insofar as it seeks injunctive relief. *See Friery v. L.A. Unified Sch. Dist.*, 448 F.3d 1146, 1148 (9th Cir. 2006) ("As standing implicates Article III limitations on our power to decide a case, we must address it before proceeding to the merits.").

[10] *See Sengupta v. City of Monrovia*, No. CV 09-00795 ABC SHX, 2010 WL 3368438, at *3 (C.D. Cal. Aug. 25, 2010) ("It is a fair reading of the statutory language regarding 'a successful party' and 'any action which has resulted' that an award of attorney's fees pursuant to [§ 1021.5] is premature if the action is still unresolved.") (citation omitted);

California Code of Civil Procedure section 1021.5 provides that, if certain criteria are met, "[u]pon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest." "When California plaintiffs prevail in federal court on California claims, they may obtain attorneys' fees under section 1021.5." *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016); *see also Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir.1995). "To determine whether a party is 'successful,' courts look at the outcome the parties sought in commencing the action, the situation before the party commenced the suit, and the situation today." *People v. Investco Mgmt. & Dev. LLC*, 22 Cal. App. 5th 443, 458 (2018). A plaintiff may be a motivating "catalyst" if it "achieves its litigation objectives by means of defendant's 'voluntary' change in conduct in response to the litigation." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 572 (2005).

To demonstrate one is a "prevailing" or "successful party"[11] where there is no court-ordered judgment on the merits, judicially ordered settlement, or other judicially recognized change in the legal relationship between the parties, the moving party bears the burden of establishing, among other criteria, that (1) "the lawsuit was a catalyst motivating the defendants to provide the primary relief sought," and (2) "the lawsuit had merit." *Id.* at 567, 575; *Tipton-Whittingham v. City of L.A.*, 34 Cal. 4th 604, 608 (2004). To qualify as a catalyst, the lawsuit must have been "a substantial causal factor" contributing to Defendant's change of conduct. *Henderson v. J.M. Smucker Co.*, No. CV 10–4524–GHK (VBKx), 2013 WL 3146774, at *4 (C.D. Cal. June 19, 2013) (quoting *Graham*, 34 Cal. 4th at 573). "If plaintiff's lawsuit induced defendant's response or was a material factor or contributed in a significant way to the result achieved then the plaintiff has shown the

---

*Urbaniak v. Newton*, 19 Cal. App. 4th 1837, 1844 (1993) ("the benefit obtained must be 'secure' before the fees may be awarded.").

[11] "[T]he terms 'prevailing party' and 'successful party,' as used in section 1021.5, are synonymous." *Graham*, 34 Cal. 4th at 570.

necessary causal connection." *Californians for Responsible Toxics Mgmt. v. Kizer*, 211 Cal. App. 3d 961, 967 (citations omitted). The court's factual finding that the plaintiff's lawsuit was a catalyst must be supported by "substantial evidence." *Godinez v. Schwarzenegger*, 132 Cal. App. 4th 73, 92 (2005). "[T]he chronology of events may raise an inference that the litigation was the catalyst for the relief." *Hogar v. Cmty. Dev. Com. of City of Escondido*, 157 Cal. App. 4th 1358, 1366 (2007). Once the inference has been raised, defendants must present evidence to rebut it. *See Kizer*, 211 Cal. App. 3d at 968. The California Supreme Court has recognized that a defendant "knows better than anyone why it made the decision that granted the plaintiff the relief sought, and the defendant is in the best position to either concede that the plaintiff was a catalyst or to document why the plaintiff was not." *Graham*, 34 Cal. 4th at 573.

Here, although it is undisputed that Plaintiff's litigation objective has been achieved through Defendant's addition of the word "Flavored" on the Beverages' labels, (SUF P43, P44, P45), Plaintiff has not shown his suit was the "catalyst" for that outcome. In arguing that his lawsuit caused Defendant to change its labels, Plaintiff points to the timeline leading up to and including the filing of his complaint. Specifically, on October 25, 2018, Plaintiff asserts that he served on Defendant a letter, (SUF P31 (hereinafter the "Demand Letter")), demanding Defendant "[r]emove the misleading characterizing terms from the [Beverages'] labels, or add the corrective language" such as "natural lime flavor" or "lime flavored." (SUF Ex. P11 at 7-13). On July 19, 2019, when defendant had not responded to the Demand Letter, (SUF P32), Plaintiff filed the complaint in this case, (ECF No. 1), and Defendant thereafter changed its labels to add the word "Flavored."[12]

Because Defendant achieved Plaintiff's litigation objective *after* this lawsuit commenced, the burden has shifted to Defendant to present "enough convincing contemporaneous evidence to rebut the inference from the chronology of events."

---

[12] The Parties dispute the exact date Defendant changed the labels. However, both parties agree that the updated labels were available on retail shelves *after* July 19, 2019. *See* (SUF P37, D107).

*MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 894 (N.D. Cal. 2015). To meet this burden, Defendant does not dispute Plaintiff's timeline. However, it argues that the decision to change the challenged label occurred *before* Plaintiff's proffered timeline commenced and argues based on that timeline that the evidence "presented conclusively confirms that the lawsuit did not motivate Bai to update its labels." (ECF No. 108-1 at 45). In support of its argument, Defendant submits the declaration of Diane Malunowicz, who is the director of regulatory and scientific affairs for Keurig Dr Pepper, Inc. ("KDP") and heads KDP's regulatory group responsible for reviewing the products' labels. (SUF Ex. D1 ¶ 3). The predecessor of KDP, Dr Pepper Snapple Group, acquired Bai in January 2017 and reviewed the Beverages' labels. (SUF D89; Ex. D1 ¶ 5). According to Ms. Malunowicz, in or about September 2017, Defendant's regulatory group "decided to add the word 'Flavored' after the named fruit(s) on the front panel of the label" for both the Cocofusion beverages as well as Bai Bubbles. (SUF Ex. D1 ¶ 6). That same month, Defendant approved finished labels for Bai Bubbles including the word "Flavored" on the front panel. (SUF Ex. D1 ¶ 7; Ex. D1 at 10–13). For the Cocofusion beverages, Ms. Malunowicz declares that Defendant waited to update the labels because Defendant was also in the process of updating the Beverages' formulas, and therefore sought to make all the changes to the Cocofusion beverages at once to "avoid introducing multiple new versions of the product labels within a short timeframe." (SUF Ex. D1 ¶ 9). In "early 2019," once the formula update was complete, Defendant began approving updates to the labels. (SUF Ex. D1 ¶ 10). By April 10, 2019, Defendant had issued LINs for all three Cocofusion flavors still in production. (SUF D100–D103). Those LINs proposed adding the word "flavored" to the Beverages' labels. (SUF D95, D99–D103). Defendant then issued the finalized labels for the Cocofusion beverages with the addition of the word "Flavored" by July 16, 2019. (SUF D104). Ms. Malunowicz declares that neither the Demand Letter "nor Plaintiff's lawsuit influenced or accelerated Bai's decision to update the Bai Antioxidant Cocofusion labels to include the word 'Flavored.'" (SUF Ex. D1 ¶ 18).

      Defendant also submits a declaration from Adam Fox, the supply chain manager for KDP and Defendant. (SUF Ex. D2). Mr. Fox is responsible for "taking updated product labels that have been approved by the relevant stakeholders and putting them into production with our production facilities." (SUF Ex. D2 ¶ 2). Mr. Fox declared that Defendant placed its first order for the new labels including the word "Flavored" on July 15, 2019. (SUF Ex. D2 ¶ 6). Mr. Fox also declared that neither the Demand Letter "nor Plaintiff's lawsuit influenced or accelerated Bai's rollout of the Bai antioxidant Cocofusion products with the updated labels." (SUF Ex. D2 ¶ 12).

      The Court finds that Defendant's contemporaneous evidence rebuts the inference arising from Plaintiff's alleged chronology of events. Taken together, Ms. Malunowicz and Mr. Fox's declarations demonstrate that Defendant decided to add the word "Flavored" to the Cocofusion beverages' labels *before* Plaintiff commenced this lawsuit. Contrary to Plaintiff's assertion, Defendant's timeline is no coincidence. Defendant decided to update the Cocofusion labels at the same time it decided to update the Bai Bubbles labels, which occurred immediately after KDP acquired Bai in 2017. It is also significant that Defendant submitted declarations from the individuals responsible for implementing changes to the Beverages' labels. *Cf. MacDonald*, 142 F. Supp. 3d at 893 (finding defendant's evidence insufficient in part because it failed to provide "declarations from the final decision makers who actually recommended and approved the 2014 recall. What role this lawsuit played in their decisions is unknown."). In addition to the declarations, Defendant submitted LINs that substantiated Ms. Malunowicz and Mr. Fox's sworn statements. In sum, based on the foregoing evidence, the Court finds that Plaintiff's lawsuit was not a catalyst to motivate Defendant to update the Cocofusion beverages' labels. Accordingly, Plaintiff is not a "prevailing" or "successful party" under CCP § 1021.5.

//
//
//

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment. All pending deadlines and hearings in this action are vacated. Each side shall bear its own fees and costs. Defendant shall submit a proposed form of judgment within **seven** days of the date of this order.

**IT IS SO ORDERED.**

DATED: August 19, 2022

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE